# THE STATE ex rel. HILLEMAN et al., v. FORT, Judge.

### In Banc, February 24, 1904.

1. **CONDEMNATION: Appraisement: Review by Court.** The assessment of property sought to be condemned for a public use by the commissioners, is not conclusive. The court has the power to review their appraisement, and to make such order therein as right and justice may require, and to order a new appraisement, but in case a new appraisement is ordered, at the request of either party, it must be made by a jury.

2. ———: ———: **Setting Aside: Execution.** Where the court sets aside the assessment made by the commissioners, and orders a new appraisement by a jury, no execution can be thereafter issued against the railroad for the amount of damages awarded by the commissioners, for there is no judgment upon which to base an execution.

3. ———: ———: ———: ———: **No Election to Abandon.** And the fact that the company did not file an election to abandon the proceeding within ten days after the filing of the commissioners' award does not affect the fact that the court set aside the assessment upon exceptions timely filed.

4. ———: ———: ———: **Exceptions.** Where the trial court, upon exceptions duly filed, sets aside the commissioners' assessment and orders a new appraisement by a jury, and neither party excepts to that order, it becomes a final judgment, and wipes out all rights that might otherwise have arisen out of the assessment by the commissioners.

5. ———: ———: **Abandonment Within Ten Days.** If the condemning company files exceptions to the award of the commissioners and those exceptions are sustained by the court and a new appraisement ordered, it is of no consequence whether or not the condemning company filed its election to abandon the proceeding within ten days after the commissioners' assessment was made. A condemnation proceeding may be abandoned at any time before the rights of the parties have become vested. The award of the commissioners does not become a final judgment if no election to abandon is filed within ten days after it is awarded, if exceptions thereto are timely filed.

6. ———: ———: ———: **Meaning of Statute.**  The statute means
that the condemning party has the right to abandon the pro-
ceeding within ten days after the first assessment by the com-
missioners, or, if the court awards a new assessment, within ten
days after the subsequent award by other commissioners or by a
jury.  And if, in any such case, the condemning party files its
election to abandon within ten days, the whole proceeding is
abandoned, and there is thereafter no case pending.

## Mandamus.

PEREMPTORY WRIT DENIED.

*John A. Hope* for relators.

(1)  (a)  No one, nor all, of the steps taken in the
case of the railway company against relators, from the
filing of its exceptions to the commissioners' report down
to and including the proceedings of the recent Septem-
ber term of respondent's court, can affect the commis-
sioners' award as the amount to which relators are enti-
tled pending the litigation.  Railroad v. Clark, 119 Mo.
373.  (b)  The fact that respondent, before beginning
the jury trial, caused an entry to be made, setting aside
the commissioners' award, did not, and does not affect
the standing and force of said award, as just compensa-
tion binding on both parties.  In the language of this
court, "it is true the award of the commissioners was in
this case set aside, but it was set aside for the purpose
of allowing a new appraisement under the statute, and
the fact that it was set aside for such purpose does not
affect the conclusion before stated, because the  same
statute gives continued effect to the first award in this,
that the condemning company can pay the amount
thereof into court and proceed with the construction of
the road."  Rothan v. Railroad, 113 Mo. 138.  (c)
The obligation of the company to pay the award, as well
as respondent's plain ministerial function, is fixed by
the statute in terms so plain that there can be no possi-
ble doubt as to the meaning, viz.: "Thereupon the

company shall pay to the said clerk the amount thus assessed, for the party in whose favor such damages have been assessed. . . . and upon failure to pay the assessment aforesaid the court may, upon motion and notice by the party entitled to such damages, enforce payment of the same by execution, unless said company shall, within ten days from the return of such assessment, elect to abandon the proposed appropriation of any parcel of land, by an instrument in writing to that effect, to be filed with the clerk of said court, and entered on the minutes of the court.'' Sec. 1266, R. S. 1899. (2) (a) Throughout all the proceedings in the case, in the circuit court, and in the Supreme Court, on any and every appeal, writ of error or other process, the commissioners' award stands, until the end, as the amount to which relators are entitled, and being entitled to that amount, they are likewise entitled to an execution to enforce its payment. Railroad v. Clark, 24 S. W. 157; State ex rel. v. Withrow, 24 S. W. 640. (b) The very act of the company in adopting relators' land as the ground on which to locate its tracks (particularly when such adoption was followed by the institution of a suit to condemn) was a taking and appropriation of the land, under the power of eminent domain, and relators became then and thereby vested with the right to just compensation, not only for damages already caused by the location and proceeding to acquire the land, but also for such damages as a subsequent actual entry and construction of the railroad on the land might cause and relators' rights having thus vested, the company could not abandon the suit to condemn nor deprive relators of the damages awarded. Railroad v. Railroad, 141 Pa. St. 415; Railroad v. Commonwealth, 101 Pa. St. 196; Beale v. Railroad, 86 Pa. St. 510; Neal v. Railroad, 31 Pa. St. 19; Railroad v. Miller, 125 Mass. 3; Harrington v. County Commissioners, 22 Pick. 264; St. Louis v. Hill, 116 Mo. 533; 1 Lewis, Em. Dom. (2 Ed.), sec. 56;

Railroad v. Scott, 132 Ill. 78; Vandevere v. Kansas City, 107 Mo. 83; Railroad v. Fuller, 63 Tex. 467; Chicago v. Taylor, 125 U. S. 161; Boyd v. United States, 116 U. S. 635.

*Sam H. West* and *W. H. Miller* for respondent.

(1)  Both sides having appealed from the respective rulings before the motion for execution was filed, the circuit court was without power to do other than overrule the motion or strike it from the files, either of which was equivalent to the other.  State ex rel. v. Wood, 142 Mo. 127; State ex rel. v. Gates, 143 Mo. 63; Burgess v. O'Donohue, 90 Mo. 299; Foster v. Rucker, 26 Mo. 494; Bank v. Allen, 68 Mo. 474.  (2)  Rulings of an inferior court will not be controlled by mandamus when an appeal will lie.  State ex rel. v. Welker, 85 Mo. App. 247; State ex rel. v. Field, 107 Mo. 445; State ex rel. v. Smith, 107 Mo. 527; State ex rel. v. Neville, 110 Mo. 345; State ex rel. v. Cape Girardeau County, 109 Mo. 248; Railroad v. St. Louis, 92 Mo. 160; State ex rel. v. Bollinger Co., 48 Mo. 475; State ex rel. v. Megown, 89 Mo. 156.  The statute gives the relators a specific remedy by appeal, and when this is the case the extraordinary remedy by mandamus can not successfully be invoked.  State ex rel. v. Lubke, 85 Mo. 338; Blecker v. Commissioners, 30 Mo. 111; State ex rel. v. Marshall, 82 Mo. 484; Mansfield v. Fuller, 50 Mo. 338; State ex rel. v. County Court, 39 Mo. 375.  No discretionary power of the circuit court will be interfered with or controlled by mandamus. State ex rel. v. Jones, 155 Mo. 570; State ex rel. v. Talty, 166 Mo. 529.  (3)  Whether relators are entitled to an execution at all, either on the verdict of the jury or the original commissioners' report, depends now upon the action of this court on motion of the railroad company for leave to abandon the proceeding which is here pending on appeal, a proper *supersedeas* having been granted.  If the railroad company is permitted to aban-

don, certainly relators can not have the money awarded by the commissioners or by the jury.

FOX, J.—This controversy grows out of the following state of facts: On the 5th of May, 1902, the Gray's Point Terminal Railway Company, a Missouri railroad corporation, began a proceeding under article 7, of chapter 12, Revised Statutes 1899, in the circuit court of Scott county, to condemn ten and thirty-one hundredths acres of land belonging to the relators, Henry Hilleman being the owner of the fee, and Charles Hilleman having a lease thereon for ninety-nine years, for yard purposes of said railroad. The venue was afterwards changed to the circuit court of Stoddard county, of which court the respondent is the regularly elected and qualified judge. After some preliminary steps, the court appointed three commissioners to assess the damages which the defendants therein, the relators herein, would suffer by reason of the condemnation of their said land for such railroad purpose. On the 10th of November, 1902, the commissioners made their report and assessed the damages which Henry Hilleman, the owner of the fee, would suffer, at $13,000, but made no assessment of damages as to Charles Hilleman, the owner of the leasehold estate. On the 19th of November, 1902, the railroad company filed exceptions to the report of the commissioners, specifying as grounds therefor, first, that the assessment was void because it did not specify how much was granted to each of the defendants; second, that the assessment was so outrageous as to shock every idea of justice and fair dealing; third, that the assessment showed on its face that the commissioners acted without being informed or through a misconception of the facts or purely through bias and prejudice; fourth, that the defendants had never asked more than two hundred dollars an acre for the land, and that the assessment by the commissioners of thirteen hundred dollars an acre was in open defiance of justice

and right.  And, for these reasons, the railroad company asked the court to set aside the report and "either to appoint new commissioners or to grant it a trial by a constitutional jury."  The report and exceptions were filed at the September term, 1902, but the court made no ruling on the exceptions at that term.  At the following term, however, to-wit, on March 6, 1903, the court heard the exceptions and *sustained* them, and set aside and for naught held the report, and ordered a new appraisement to be made by a jury.   Accordingly, a jury was summoned and the matter tried, resulting in a general assessment of damages in favor of the defendants for fourteen thousand dollars.

Thereupon, on the same day, the railroad company filed, in open court, its election in writing, to abandon the proceedings, and the court ordered it spread on the minutes.

Thereafter, on March 9, 1903, the defendants filed a written agreement to apportion the damages between them, one-fourth to Henry Hilleman, and three-fourths to Charles Hilleman, and asked the court to make an order of apportionment between them in accordance therewith.   On the same day, the defendants filed a motion to strike from the files the election to abandon the proceedings theretofore filed by the railroad, on the ground that it came too late, in that, it was not filed within ten days after the assessment by the *commissioners*.   Nothing further was done in the case at the March term, 1903.

On the 17th of September, 1903, during the September term, 1903, the court sustained the defendants' motion to apportion the damages, and to strike from the files the railroad's election to abandon the proceedings, and denied to the railroad the right to abandon.   The railroad saved exceptions to such rulings.   On the same day, the railroad filed a motion for a rehearing as to the said rulings of the court, setting up nine grounds therefor, all of which related to the said rulings of the court,

except the ninth which was that the assessment was excessive.

On the same day the court overruled the motion as to all the grounds except the ninth, and sustained it as to that.

Thereupon, both the railroad and the defendants appealed from said order of the court, and said cross appeals are now pending in this court.

Thereupon, on the same day, the defendants filed a motion, asking the court to order the railroad to pay to them or into court for them the $13,000, assessed by the commissioners as aforesaid. with interest thereon from November 9, 1902, and for the purpose of enforcing the same, asked that executions issue against the railroad, to the sheriffs of Scott and Cape Girardeau counties, and for such further orders as would cause said award of the commissioners to be forthwith paid to defendants. The court overruled the motion on the same day.

Thereafter on September 23, 1903, the defendants obtained from one of the judges of this court an alternative writ of mandamus against the trial judge, commanding him to show cause why he should not sustain the defendant's said motion for an execution and cause the thirteen thousand dollars (with interest) assessed by the commissioners to be immediately turned over to the defendants, and this is the question involved in this case.

Section 21 of article 2 of our Constitution provides that private property shall not be taken or damaged for public use without just compensation, and that, "such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested."

The parties have filed a stipulation herein that no money has been paid to the owners or deposited in court

for them, in payment of the commissioners' appraisement or the jury's verdict; that the railroad has never taken actual, physical possession of the land sought to be condemned and has not in any way disturbed the relators in the possession and enjoyment of the property other than by the exercise of the power of eminent domain as is shown by the proceedings in the condemnation suit, and that the relators have not cultivated or otherwise used the premises since the filing of the commissioners' report on November 10, 1902.

The Legislature by article 7 of chapter 12, Revised Statutes 1899, has conferred upon telegraph, telephone, gravel and plank and railroad companies, the right of eminent domain, and has enacted a code of procedure governing actions for condemnation of lands for such purposes. The general features of the act require a suit to be brought and the landowner to be notified. The specific provisions of the act which are pertinent to this case are embodied in sections 1266 and 1268, Revised Statutes 1899, which are as follows:

Sec. 1266. "The court, or judge thereof in vacation, on being satisfied that due notice of the pendency of the petition has been given, shall appoint three disinterested commissioners, who shall be freeholders, resident of the county in which the real estate or a part thereof is situated, to assess the damages which the owners may severally sustain by reason of such appropriation, who, after having viewed the property, shall forthwith return, under oath, such assessment of damages to the clerk of such court, setting forth the amount of damages; and should more than one owner be included in the petition, then the damages allowed each shall be stated separately, together with a specific description of the property for which such damages are assessed, and the clerk shall file said report and record the same in the order book of the court; and thereupon such company shall pay to the said clerk the amount thus assessed, for the party in whose favor such damages have

been assessed; and on making such payment it shall be lawful for such company to hold the interest in the property so appropriated for the uses aforesaid; and upon failure to pay the assessment aforesaid, the court may, upon motion and notice by the party entitled to such damages, enforce the payment of the same by execution, unless the said company shall, within ten days from the return of such assessment, elect to abandon the proposed appropriation of any parcel of land, by an instrument in writing to that effect, to be filed with the clerk of said court, and entered on the minutes of the court, and as to so much as is thus abandoned the assessment of damages shall be void.''

Sec. 1268. ''Upon the filing of such report of said commissioners, the clerk of the court wherein the same is filed shall duly notify the party whose property is affected of the filing thereof; and the report of said commissioners may be reviewed by the court in which the proceedings are had, on written exceptions, filed by either party in the clerk's office, within ten days after the service of the notice aforesaid; and the court shall make such order therein as right and justice may require, and may order a new appraisement, upon good cause shown. Such new appraisement shall, at the request of either party, be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages; but notwithstanding such exceptions, such company may proceed to erect said telephone or telegraph line, or construct said road or railroad; and any subsequent proceedings shall only affect the amount of compensation to be allowed. In all cases arising under the provisions of this article, the report of commissioners, when signed by a majority of them, shall be taken and considered as the report of all.''

It will be noted that the Constitution requires that the compensation ''shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law,'' and

that in enacting such a law, the Legislature has made it possible for both methods of ascertaining such compensation to be employed, that is, first, by a board of freeholders, whose report shall be subject to review by the court, and if the court does not agree with the commissioners, and orders a new appraisement, then, second, at the request of either party, the appraisement is required to be made by a jury, under the supervision of the court.

The original act (Wagner's Stats. 1871-2, art. 5, chap. 37, sec. 4, p. 328) simply authorized the court to order a new appraisement and did not contain the words "Such new appraisement shall, at the request of either party, be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages," that are now contained in section 1268, Revised Statutes 1899. Those words, as also the last sentence of section 1268, Revised Statutes 1899, were added by the act of 1873. [Laws 1873, p. 24.]

In other words, under the present law, the question of compensation must first be passed on by a board of freeholders, but their assessment is not conclusive, for the court is given the power to review their assessment, and to make such order therein as right and justice may require, and is also given power to order a new appraisement, and in case the court so orders, the new appraisement, at the request of either party, must be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages. In this way, the common sense and knowledge of the freeholders is first applied to the settlement of the question, but a judicial review is preserved over the findings of the commissioners, with power to set aside the commissioners' report and order a new appraisement, which either party has the right to have made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages.

In the case at bar these provisions of law were ob-

served.   The commissioners made an assessment.   The railroad filed written exceptions thereto, the court sustained the exceptions, and set aside the assessment made by the commissioners, and ordered a new assessment, which, at the request of the  railroad, was made by a jury.   As soon as  the jury made their assessment, the railroad filed a written election to abandon the proceedings.   ·The court denied it the right to so abandon,  but upon the railroad filing a motion for a rehearing, set aside the verdict and granted a new trial, and thereupon both parties appealed.    Thereafter the relators moved the court to issue an execution against the railroad for the thirteen thousand dollars assessed by the commissioners, and upon the court refusing so to do, applied to this court for a mandamus to compel the trial court to issue such an execution.

The relators' contention, briefly stated, is that the election of the railroad  to  abandon  the  proceedings came too late, under section 1266,  Revised  Statutes 1899, because it was not filed within ten days after the assessment of the commissioners was filed, and   therefore notwithstanding all  the  subsequent  proceedings that were had in the case in the trial court, the relators are entitled to the thirteen  thousand  dollars  damages that were assessed to them by the commissioners, and that the circuit court had no discretion in the matter but only a ministerial duty to perform, to-wit, to issue an execution therefor, and hence  mandamus is the proper remedy.

This is a misconception of the law.    Its first and fundamental error is in assuming that the assessment by the commissioners is still existent, when in fact, it was expressly set aside and for naught held, and a new appraisement ordered.    When this was done there was no assessment left, and the matter was in the  same shape as if no assessment had ever been made.  This being true and the compensation to be allowed the relators not being ascertained, the court had no basis upon

which to predicate an execution, for there was then neither an assessment nor a judgment which an execution could enforce.

But the error of the relators further assumes that the assessment of the commissioners still stands, notwithstanding it is set aside by the court, and notwithstanding the question of compensation has been submitted to and passed upon by a jury, and notwithstanding the court has set aside the verdict of the jury and granted a new trial, and notwithstanding both parties have appealed from that order of this court. The statute affords no countenance for such a contention, and such a practice would be so unscientific and incongruous that no court would adopt it unless the law requiring it to be done was so plain and imperative as to make any other construction of it impossible.

The trial court, upon exceptions properly filed, exercised its discretion and set aside the assessment of the commissioners, and ordered a new assessment. Neither party excepted to that order. It is, therefore, final. That forever ended the assessment by the commissioners, and wiped out all rights that might otherwise have arisen out of that assessment.

It follows, therefore, that the circuit court had no power, judicial, ministerial or otherwise, to order an execution to issue to collect the thirteen thousand dollars that had been assessed by the commissioners.

But there are other equally cogent reasons which lead to the same conclusion. It must be borne in mind that mandamus will not lie to control judicial or discretionary acts, nor to direct a court to enter any particular judgment. It only lies to compel a judge or person vested with a discretion to act, or to compel the performance of a mere ministerial duty. [State ex rel. v. Garesche, 65 Mo. 489; State ex rel. v. Tolle, 71 Mo. 645; State ex rel. v. Megown, 89 Mo. 156; State ex rel. v. Board of Health, 103 Mo. 22; State ex rel. v. Gregory, 83 Mo. 123; State ex rel. v. McGrath, 91 Mo. 386; State

ex rel. v. Klein, 140 Mo. 502.]   It is also the settled law that mandamus can not be used to perform the office of an appeal or writ of error.   [State ex rel. v. Field, 107 Mo. 445; State ex rel. v. Smith, 107 Mo. 527; Williams v. Court Com. Pleas, 27 Mo. 225; State ex rel. v. Lubke, 85 Mo. 338; State ex rel. v. Lewis, 76 Mo. 370; State ex rel. v. McKee, 150 Mo. 241.]

Likewise it is the rule that mandamus is a discretionary remedy and that it will not be granted unless the right sought to be enforced thereby is clear and there is no other adequate remedy available to the relator. [State ex rel. v. Lewis, 76 Mo. 370; Williams v. Court of Common Pleas, 27 Mo. 225; State ex rel. v. Newman, 91 Mo. 445; State ex rel. v. Williams, 99 Mo. 291; State ex rel. v. Lesueur, 136 Mo. 452; State ex rel. v. Bollinger Co. Court, 48 Mo. 475.]

Unless, therefore, the duty here sought to be enforced is purely ministerial, and the relators' right is clear, and they have no other adequate remedy, the peremptory writ must be denied.

The relators realize this, for they claim that the assessment of the commissioners stands, notwithstanding it was set aside and a new assessment was made by the jury, and notwithstanding the court set the assessment of the jury aside also, and notwithstanding both parties appealed from that order.   Their theory is that the assessment of the commissioners takes the place of a judgment and requires no judgment to enforce it, but that they are absolutely entitled to the amount assessed unless the railroad abandons the proceeding within ten days after the assessment of the commissioners is filed, and that the subsequent steps that may be taken in the case do not affect this right.   They cite in support of their contention many cases, among them State ex rel. v. Withrow, 24 S. W. 640, and Railroad v. Clark, 119 Mo. 373.   A careful examination of those and the other cases cited, as also of Gray v. Railroad, 81 Mo. 126, and Railroad v. De Lissa, 103 Mo. 125, will show that the

railroad company had either paid the money into court or had taken possession of the land, and thereafter sought to abandon the proceedings or to keep the owner out of the money while it was enjoying the possession. The questions here involved were not present in any of those cases, nor do they give any support to the contention of the relators that they are entitled to the assessment made by the jury under facts such as those in judgment here.

It is strenuously contended by relators that a condemning company can not abandon the proceedings at any stage except within ten days after the commissioners file their assessment, and that even if the court sets aside the assessment and a new assessment is made by a new set of commissioners or by a jury, the company can not abandon the proceedings. This contention is based solely upon the wording of section 1266, Revised Statutes 1899. Such a contention is clearly too narrow, and overlooks the reason of the law, and the provisions of section 1268, Revised Statutes 1899.

The general rule of law pertaining to the right of a condemning company to abandon the proceedings is forcibly stated in 7 Enc. Pl. and Pr., 673, as follows: "A railroad company which, in the exercise of the right of eminent domain, has instituted condemnation proceedings may subsequently abandon its purpose of taking the property and discontinue the proceedings, and, if it so desires, may select a route other than the one first proposed. Where the condemning party considers the compensation assessed too high, or so high as to render it expedient to go around instead of through the tract, it may abandon the proceedings, and leave the landowner undisturbed."

And the same authority, at page 674, et seq., says: "The general rule, in the absence of statutory provisions to the contrary, is that the condemning party may discontinue the proceedings at any time before the rights of the parties have become vested. There is not

even a cavil as to the correctness of this rule, but as to the time when the rights of the parties become vested there is a diversity of opinion.  There seems to be no denial of the right of the condemning party to abandon the proceedings where they have not been confirmed or consummated.  It may do so at any time prior to the confirmation of the commissioners' report, after the assessment of the damages has been made, and the award has been filed, and either before the submission of the inquiry to the jury, or after verdict and prior to judgment.''

The same authority then points out that the New York rule is that the proceedings can not be abandoned after the commissioners' report has been confirmed, and that the rule is substantially the same in  Louisiana, Nebraska, New Hampshire, New Jersey and Pennsylvania.  But it then adds:  ''Opposed to the New York rule is the contrary doctrine which obtains in the great majority of the States in this country.  In these jurisdictions the test laid down is to inquire whether the title to the land has vested in the condemning party, and a right to the damages in the landowner, and the discontinuance of the proceedings is permitted until the happening of that event, which does not occur prior to the actual payment or securing of the compensation in the manner required by law, or until the condemning party has entered into possession of the land.  In these jurisdictions the company may abandon the  proceedings at any time before final judgment; or after affirmance of the verdict in favor of the landowner; or after judgment assessing the damages, or even after appeal from the judgment.  But the right to abandon is lost if the company have reduced the land to possession, and constructed the public improvements thereon, or if private rights have attached which would be prejudiced by the abandonment, such as rights acquired under contract between the parties.''

Under these general rules the  railroad  company

would have a right to abandon these proceedings even now, for instead of the assessment of the commissioners being confirmed, it has been set aside, and there has never been a judgment of the court confirming any assessment of the damages.

The question is how far our statute has changed the general rule. As before stated, article 7 of chapter 12, Revised Statutes 1899, is a code unto itself. It was originally enacted as a whole act. It deals with the subject of the condemnation of the land of the citizen for public use. It recognizes the right of abandonment by the condemning company if the assessment is so high as to make the acquisition of the property prohibitive. It is true the right to abandon is spoken of only in section 1266, and that that section relates to the assessment by the commissioners. But these considerations are not conclusive of the question. For section 1268 is *in pari materia* with section 1266, and must be · read in connection with it, and the true meaning and purpose of the lawmakers must be gathered from the whole act, including all its parts, its context, spirit and object as well as the words or the location in any one section or paragraph of the act of the particular clause or words under consideration. [State ex rel. v. St. Louis, 174 Mo. 125; Meriwether v. Love, 167 Mo. 514.]

Read in this way we find a right to abandon is given within ten days after the damages are assessed. We also find that the damages are to be assessed in the first place by a board of commissioners. Then the court is given the power to review the assessment, by a new set of commissioners or, if either party requests it, by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages, and this, of course, involves the usual power of the court to grant a new trial after the verdict and the other ordinary incidents of a trial in court, including a right of appeal, even though that right is not even referred to in the act. [Railroad v. Clark, 119 Mo. l. c. 365.]

No reason has been assigned nor do we think any can be given for construing these provisions of the statute so as to limit the right to abandon to a period not later than ten days after the first assessment of the commissioners has been filed, and to deny the right at any time thereafter. On the contrary, all the reason and common sense of the act is opposed to such a construction. Remember that the reason underlying the right to abandon is to enable the condemning party, that is exercising the State's right of eminent domain, to ascertain at what price the land needed for the public improvement can be acquired, and to drop the proceeding if the price is exorbitant or prohibitive. Remember also that the condemning party is given the right to file exceptions, not only to the first report, but to all other and subsequent reports or verdicts of a jury, and the court is given the power to set them all aside, if in its judgment it is proper to do so.

In view of these facts and provisions, what possible reason could the lawmakers have had to limit the right of abandonment to a time anterior to the time when the court has acted on the exceptions? Or what reason could there be for giving the right to abandon after the first assessment and denying it after the second assessment or after a verdict? An abandonment would be unnecessary, if the court could be induced to set aside the assessment that is too high, and to award a new appraisement. Such a construction of the law, as relators contend for, would practically nullify the provision which gives a right to file exceptions to the report and which gives the court power to set aside the assessments.

We conclude, therefore, that the true reason and meaning of the law is, that the condemning party has a right to abandon the proceeding at any time within ten days after the first assessment by the commissioners, or,

if the court awards a new assessment, within ten days after the subsequent assessments by subsequent commissioners or by a jury.

The railroad in this case succeeded in convincing the court that the first assessment (and the second too for that matter) was excessive, and so the court set it aside, and ordered a jury to assess the damages, which the jury did, giving a thousand dollars more damages than the commissioners had done. On the same day the railroad filed its written abandonment of the proceedings. This the railroad had a perfect right to do, and the trial court should at once have entered an order discontinuing the proceedings. Thereafter, the railroad would have been answerable to the relators for the damages they had sustained by reason of the condemnation proceedings, and in this way all damages would have been made good. [Railroad v. Lackland, 25 Mo. 515; Railroad v. Railroad, 138 Mo. l. c. 596.]

The result is that the assessment of the commissioners, for which a mandamus is herein asked, to compel the circuit court to issue an execution to collect, is not existent; there is no judgment in the condemnation case upon which an execution could issue, but from the date of the filing by the railroad of its election to abandon the whole proceeding there has never been, in contemplation of law, any case pending to condemn the relators' lands. There was, therefore, no ministerial or other duty devolved upon the circuit court to issue the execution asked, but on the contrary it was without any power to issue any execution or process in the case, except for the court costs.

In view of these conclusions, the peremptory writ must be denied. It is so ordered. All concur.