STATE ex rel. STATE HIGHWAY COMMISSION of Missouri, Respondent,

v.

Mike DeMARCO, Exceptions of Little Piney Oil Company et al., Appellants.

No. 52791.

Supreme Court of Missouri, Division 1.

Jan. 8, 1968.

Robert L. Hyder, Melvin Englehart, Jefferson City, for plaintiff-respondent.

Weldon W. Moore, Rolla, for appellant Little Piney Oil Co., a Corporation.

Eugene E. Northern, Rolla, for appellant W. L. Jaques and another.

J. P. MORGAN, Special Judge.

Two landowners have joined in appealing from the result reached in this rather abortive condemnation action initiated by the State Highway Commission. We have jurisdiction as title to real estate is involved. Article V, Section 3, Constitution of Missouri.

Respondent's motion to dismiss the appeal for failure of appellants to comply with Rule 83.05, V.A.M.R., is overruled and the case will be considered on its merits. The commission, as plaintiff herein, was involved in the establishment and construction of Interstate Highway 44, which in the immediate area of interest to the parties, replaced U. S. Highway 66 in Phelps

County, Missouri. A brief outline of the steps taken by the commission in seeking to establish the right-of-way along defendants' properties will suffice to make most of the questions raised readily apparent. On July 20, 1964, plaintiff filed a condemnation petition seeking to appropriate from Little Piney Oil Company, a corporation, approximately .19 acre of land and from W. L. Jaques and wife, .41 acre, more or less. On August 18, 1964, commissioners were duly appointed and their report filed September 10, 1964, reflected that Little Piney Oil Company was damaged in the sum of $15,025 and W. L. Jaques and wife were damaged in the amount of $4,575. Both landowners and the commission filed exceptions to the commissioners' report. The awards were deposited with the clerk and subsequently drawn down by each of the defendants. It appears conceded that the commission took possession of the lands alleged to have been owned by defendants. Prior to any trial on the exceptions and on January 7, 1966, the commission filed separate motions requesting the petition be dismissed as to each of these defendants and asking an order that each be directed to refund their award to plaintiff. Each motion alleged that the commission had discovered on December 4, 1965, that the petition as to these defendants had been erroneously filed, because the land described as being that of Little Piney Oil Company, sought to be condemned, had already been acquired for highway purposes by a deed dated June 1, 1953, and that of Jaques and wife by a deed dated May 25, 1953. Attached to the motions as exhibits were the two deeds plaintiff contended included the same lands as described in the condemnation petition insofar as it pertained to these defendants. Little Piney Oil Company filed a response to this motion admitting that it had received the commissioners' award of $15,025, but denied the land described in the petition, as to their portion of the lands involved, was the same land described in the deed attached to the motion as an exhibit, and further that plaintiff had failed to provide an outer roadway for access as had been reserved in the deed of 1953. In addition to this attack on the motion, after the hearing, Little Piney Oil Company was granted leave to amend its pleading to allege that through mistake and misunderstanding of all parties the land in question was included in the 1953 deed. Defendants Jaques and wife admitted receipt of the $4,575 and alleged, "* * * if said deed actually and in fact grants to the plaintiff the rights claimed by plaintiff, which these defendants deny that it does, that said deed was obtained by plaintiff through fraud and misrepresentation * * *" An issue of title was created and the parties make no objection to the manner in which the issues were drawn. Murphy v. Barron, 286 Mo. 390, 228 S.W. 492(15).

The trial court heard the evidence on the conflicting claims and in December, 1966, found that the right-of-way easements in the lands of both defendants were vested in the plaintiff by the deeds of conveyance obtained in 1953, and that defendants had no legal claim to the monies paid and each was directed to pay the amount received into the registry of the court for the use and benefit of the State Highway Commission.

The evidence shows Little Piney Oil Company owns a tract of land abutting the south side of Interstate 44 about three miles east of Rolla on the west side of the intersection of I–44 and Phelps County Route V. The frontage along I–44 is approximately 302.24 feet with the depth varying from 135 feet on the east to 52 feet on the west. The tract is improved with a gasoline service station and may be reached by a 30 foot commercial entrance from a spur parallel to I–44 extending from the interchange at the intersection of Route V and I–44 approximately 1,800 feet to the east. W. L. Jaques and wife own a tract of land abutting the south side of the same spur and adjoining the Little Piney tract on the east. The Jaques' frontage is approximately 142 feet with a depth of 175 feet on the east and 135 feet on the west.

This tract is improved with a drive-in cafe and may be reached from the spur by a 50 foot double entrance across the common boundary between it and the Little Piney tract. At this location I–44 has dual lanes of 24 feet each divided by a grassed median strip. At the intersection of Route V and I–44 a crossover is provided for access to both the eastbound and westbound lanes of I–44. The spur is a 20 foot bituminous surface roadway extending westerly from the interchange or crossover along the north side of the Jaques tract and ends at a metal barrier constructed across it approximately 125 feet east of the west boundary of Little Piney's property. The contested area comprises a strip of land 40 feet wide extending along, parallel and adjacent to the north side of both tracts.

It is agreed Jaques and wife acquired the land in question in the spring of 1953 from Messrs. Woolrych and Strothkamp for the sum of $8,000 and at the time of the purchase were aware the commission was then engaged in land acquisition for converting Route 66 to a four lane limited access highway. Soon thereafter on May 25, 1953, in consideration of $2,600, they executed a deed to the state for the use of the commission conveying two separate and distinct tracts of land identified as Tracts 1 and 2. Nothing can be gained by setting out the extended description of Tract 1, but it is noted that the various station numbers are tied to and are identifiable with established section corners. State ex rel. Morton v. Allison, Mo., 365 S.W.2d 563. Tract 2 is described as: "A tract of land 40 feet in width and approximately 260 feet in length adjoining the right side of tract 1 above, extending 40 feet southerly from opposite station 1164+18 to opposite station 1166+78 containing 0.23 acres, more or less, of new right-of-way." (The *right* side was established in the description of Tract 1 as the *south* side of the eastbound lane of I–44.

A few days thereafter on June 1, 1953, the commission obtained a similar deed from adjoining owners, Edmund H. Woolrych and wife, which, as far as of interest here, included a similar description extending the 40 foot additional right-of-way along the north boundary of the instant parties' land. Little Piney Oil Company is a successor owner by deed of August 1, 1956, and relies generally upon the evidence adduced by defendant Jaques.

■ Our review of this equity case is de novo and it is our province to weigh the evidence and reach our own conclusion as to its weight. State ex rel. State Highway Commission v. Schwabe, Mo., 335 S.W. 2d 15. The commission, as movant, assumed the burden of establishing that all of the land sought to be condemned in this action had in fact been purchased by it in 1953. It called as a witness Mr. C. V. Mann, formerly County Surveyor, who testified that at the request of Mr. Jaques he surveyed the Jaques' tract on July 18, 1953; that Mr. Jaques was present at the time and gave him the information from which he decided the north boundary line of the tract was 40 feet south of the south right-of-way line of Route 66, and further testified, " * * * we all understood, and I understood, that there was still a—40 feet here for the entry drive that didn't belong to Mr. Jaques."

Billy Rex Taylor, a graduate engineer and designer for the commission, testified that he had made the error which set the stage for this case; that he prepared the original design (Exhibit No. 4) for the construction of I–44; that he made this plan from the original design plans of Route 66 and was not aware of the two deeds obtained in 1953 (Exhibits No. 1 and No. 2); that he then prepared a corrected or revised plan for I–44 (Exhibit No. 3) showing the area described as Tract 2 in the 1953 deeds as right-of-way and agreed that this was the same area designated as "permanent easement" on Exhibit No. 7 (plan sheet of Route 66). Further inquiry was, "Can you tell the Court wherein the error was made in your first preparation of plans for I–44, what was it you failed to show on it?" Answer: "It was a forty foot strip of land

lying immediately south of the right-of-way line that we had originally shown on the plans. We found that there was a forty foot additional strip which should have been shown. It's described as tract 2 in these two deeds * * *"

John W. Elmore, Survey Party Chief for the commission, testified he was in charge when a new survey was made in 1966 after the error was discovered; that the south line of the 40 foot strip (Tract 2 in the 1953 deeds) was south of the south boundary line of the spur parallel to the eastbound lane of I–44; and further, his response was "Yes" to the following inquiry: "Is it your testimony that the outer roadway was constructed within the land described?"

For the defendants, Mr. Jaques testified he talked in 1953 to persons employed by the commission; that his primary concern was to find a business location with access as he knew Route 66 was to be made a limited access highway; that he saw the plans (Exhibit No. 7), and, after seeing the designation of an area as "permanent easement" adjoining his land, did at that time determine that it really meant "permanent entrance" to accommodate both east and westbound traffic; that he didn't talk to a lawyer and only read that portion of the deed (Exhibit No. 2) pertaining to his reservation of access; that he had read some deeds in the past, but only had an 8th grade education; that between 1953 and the conversion of Route 66 to I–44, he had erected signs on the strip of land in question and the local maintenance man refused to maintain the driveway because it was off the right-of-way.

The execution of the deed was not questioned and on the evidence as shown the landowners asked (1) they be allowed to keep the awards, (2) the deeds be declared void because the descriptions are indefinite and vague and (3) that the deeds be reformed to delete Tract No. 2 because its inclusion in the conveyance was the result of a mutual mistake. The first request is dependent upon the conclusions reached reference suggestions (2) and (3). We have already concluded as to (2) that the description was sufficient and approach suggestion (3) with the admonition that the burden is upon those seeking reformation of a deed to show by clear and convincing evidence that it did not express the true agreement of the parties by reason of their mutual mistake. Walters v. Tucker, Mo., 308 S.W.2d 673. We fail to find any evidence of a mistake on the part of the commission at the time the deeds were obtained, and we cannot justify relating the present mistake of failing to call the 1953 deeds to the attention of the designer of I–44 back to the time of their execution several years earlier. Further, the record is not convincing that even a unilateral mistake was made by the grantors in 1953. Assuming, however, the deeds were the result of a mistake by defendants or their predecessors, relief would have to be denied because the mistake resulted " * * * solely from the want of such care and diligence as are exercised by persons of reasonable prudence under the same circumstances." 12 C.J.S. Cancellation of Instruments § 27b(3), p. 980; Douglass v. Douglass, Mo., 363 S.W.2d 566. The allegation of fraud has not been carried forward in their brief as there is no evidence whatever of any fact other than a "good faith error" by the commission.

The initial question was as declared to be in the landowners' brief: "That was the issue in this proceeding and the only issue, i. e., whether or not the Highway Commission had previously acquired title to the property." In addition to evaluating the evidence as presented we have sought our own answer to this question. We have platted the lands sought to be condemned as described in the petition and found all of it to have been within the area shown by a plat of the lands conveyed by the instant parties or their predecessors in the 1953 deeds (Exhibits No. 1 and No. 2). The mechanics of this effort would be of no value whatever to others and the parties, if interested, may make the same discovery by simply overlaying a plat of one on the other.

█ There is the further question whether access rights have been taken which are compensable. The deeds of 1953 had an extended reservation of access which was practically verbatim with that set out at length in State ex rel. State Highway Commission v. Johnson, (Mo.1965), 392 S. W.2d 251, at 253, and there declared to mean, " * * * there was a temporary right of access to the through lanes of U. S. Highway 66 until such time as an outer roadway was established, at which time the temporary access to the through lanes would cease, and a permanent access would attach to the new outer roadway." Such access was provided as shown by an interrogatory directed to Jaques: Q: "Do the defendants have access to the outer roadway on the south side of Highway I–44?" A: "Yes." Additionally, Mr. Elmore testified the spur was within the primary right-of-way. State ex rel. State Highway Commission v. Brockfeld, Mo., 388 S.W.2d 862. Nor can Little Piney Oil Company recover damages because the spur terminates on its property and provides travel in only one direction. State ex rel. State Highway Commission v. Meier, Mo., 388 S.W.2d 855, 859; Handlan-Buck Co. v. State Highway Commission, Mo., 315 S.W.2d 219, 223.

█ None of the parties have raised any question as to the right of the commission to dismiss a condemnation petition at this stage of the proceedings, but in view of the long established rules limiting the abandonment of condemnation actions, we have thought it proper to raise the question ourselves. As stated in Nichols on Eminent Domain (2d Ed.), Vol. 2, par. 417, "In every form of procedure for appropriating land for the public use, there must be a point when the right of the condemning party to discontinue the proceeding is lost and the right of the owners of the land to the compensation becomes vested." 30 C.J.S. Eminent Domain § 335. We held in State ex rel. State Highway Commission v. Deutschman, 346 Mo. 755, 142 S.W.2d 1025: "But if it does not take possession of any parcel of land condemned, then it has ten days to

elect to abandon it after the final assessment has been made, either by subsequent commissioners or by a jury. Such was our holding in the case of State ex rel. Hilleman v. Fort, 180 Mo. 97, loc. cit. 113, 79 S.W. 167, 171, wherein we said: 'We conclude therefore that the true reason and meaning of the law is that the condemning party has a right to abandon the proceeding at any time within 10 days after the first assessment by the commissioners, or, if the court awards a new assessment, within 10 days after the subsequent assessments by subsequent commissioners or by a jury.' " Here, however, possession was taken prior to filing the motion to dismiss or abandon the proceedings. If the facts of this case are within the contemplation of the rule that the taking of possession vests title in the condemning authority, abandonment as such, comes too late. Here the commission concedes that the entire action as it pertained to these defendants was filed in error because of an oversight in their Planning Department, and they were in fact seeking to condemn lands they had previously purchased by deeds in 1953. The presence of this fact makes it obviously clear that titles to the lands described in the petition were not at any stage of this proceeding, nor could they have been, divested from the defendants. To reach such conclusion only requires the elementary thought that it was impossible to take something from the defendants that they in fact did not own. What basis is there for the argument of defendants that they should be allowed to retain the awards? Since they lost nothing, arguably, the only justification would be that a landowner having found the condemning authority in such an error may retain such award as a windfall to himself and as a penalty to the condemning authority. The statement itself precludes any thought of attempting to rationalize such a result. The fact an error was made does not within itself justify the unjust enrichment of a party thought to be the owner of lands previously acquired by the state. The conclusion reached here cannot qualify even as an exception to the restrictive rules

on abandonment, for the rule itself contemplates the taking of private property for public use. Such a result was never possible in this case. Lack of precedents for so holding attests to the fact the State Highway Commission, as condemning authority for the state, has been most accurate in keeping abreast of its prior acquisitions.

The judgment of the trial court was correct and is hereby affirmed.

SEILER and STORCKMAN, JJ., concur.

HENLEY, P. J., not sitting.