EMPLOYERS INDEMNITY CORPORATION, Appellant, v. W. L. GARRETT ET AL.—38 S. W. (2d) 1049.

Division One, May 21, 1931.

*Chas. M. Howell, Daniel V. Howell, C. P. LeMire* and *Joshua Barbee* for appellant.

*W. D. Tatlow* for respondents.

RAGLAND, J.—Under the petition, this in form is a suit to foreclose a mortgage: in substance an action of assumpsit brought by a mortgagee against the mortgagor's grantee, based on a clause in the deed of conveyance whereby the latter purported to assume and agree to pay the mortgage debt. Through subsequent pleadings it

developed into a suit in equity to reform the deed. The pertinent facts will be stated.

On the first day of March, 1921, George Kaltenbach and Emma Kaltenbach, his wife, were the owners of a farm of 1,000 acres in Webster County, Missouri. The land was encumbered with two deeds of trust in the nature of mortgages, both of which had been executed by them. The first had been given on the 12th day of December, 1919, to secure their note of even date to the First Mortgage Trust Company of Kansas City, whereby they had promised to pay to that company $25,000 on December 1, 1926, with six per cent per annum interest thereon from date until maturity, payable on the first day of December in each year up to and including the due date of the principal sum. The second deed of trust, bearing the same date as the first, had been given to secure a commission note of $1750, payable in three annual installments.

On the date first mentioned, past due interest on the $25,000 note and the first installment of the commission note, which was also past due, together amounted to $2,069.35. Interest had accrued on the $25,000 note (from December 1, 1920, to March 1, 1921) and not then due in the sum of $375. The remaining installments of the commission note, not due, amounted to $1168.

On or about said first day of March, 1921, the Kaltenbachs delivered to the defendant Garrett, and Garrett accepted, their deed which for a named consideration of $40,000 conveyed to the latter the said 1,000 acres of land. The deed was one of general warranty; it had been prepared by filling in the blanks of a printed form, the form in common use in this State. Immediately following the description of the land conveyed, it contained this clause:

"This deed is made subject to a deed of trust to First Mortgage Trust Company for Twenty-five Thousand Dollars ($25,000) and a balance of a commission deed of trust to same parties, recorded in Book 119 at pages 175 and 258 respectively, which grantee assumes and agrees to pay. The balance on said Com. D. of T. is $1168, payable in two equal annual payments."

At the end of the instrument, following the covenants of warranty, this was written in:

"Subject to taxes for the year 1921 and after years and deeds of trust above mentioned."

Upon the delivery to him of the deed above described, Garrett entered into the possession of the land thereby conveyed and thereafter paid the remaining installments on the commission note as they fell due and also the interest on the $25,000 note as it matured, until December 1, 1925; the interest falling due on that date he failed to pay. Thereafter Employers Indemnity Corporation, the legal holder of the $25,000 note, in accordance with the terms and

provisions of the note and the deed of trust securing it, elected to declare the entire debt due as of date December 1, 1925, and commenced this action.

The original defendants were said W. L. Garrett and Annie P. Garrett, his wife, C. W. Frederick and Nora Frederick, his wife, A. P. Arthur and H. A. Jenner. The petition by formal averments alleged: the execution of the $25,000 note and deed of trust by the Kaltenbachs; the negotiation of the note in due course to the plaintiff; the assumption by Garrett of the debt evidenced by the note and his agreement to pay it under and by virtue of the provisions of the deed from the Kaltenbachs to him; his default in the payment of the interest; and the election of the plaintiff, as holder of the note, to declare the entire debt due. It concluded with a prayer for judgment against the defendant, W. L. Garrett, for the full amount of the $25,000 note, principal and interest, "and for further judgment and decree against all the defendants in this action, foreclosing plaintiff's lien upon the above described property . . . and if the amount found to be due plaintiff by said judgment is not paid within a reasonable time to be fixed by this court, that said mortgaged premises be ordered to be sold to satisfy said judgment, etc."

The petition alleged that Jenner was made a party defendant because he was the trustee in the deed of trust sought to be foreclosed, and that the two Fredericks and A. P. Arthur were claiming some right, title or interest in the mortgaged premises adverse to the interest of the plaintiff. None of these defendants answered. Mrs. Garrett answered disclaiming any interest in the land described in the petition.

Garrett in his answer denied that he had in fact assumed or agreed to pay the mortgage debt. He averred that he only purchased Kaltenbach's equity in the property, "that said assumption clause in said deed was inserted therein without the knowledge or consent of this defendant and the minds of the parties did not in fact meet concerning the said assumption clause in that this defendant did not in fact agree to pay the said mortgage indebtedness not then due on said property, or any part thereof, and did not know that said assumption clause, without his knowledge or consent, had been incorporated in said deed when the same was delivered to him." He further alleged by way of cross-bill that the assumption clause in the deed "did not and does not in fact correctly represent the agreement that was actually made between the said Kaltenbachs and this defendant, but was inserted therein by the scrivener without the knowledge or consent of either the said Kaltenbachs or this defendant, and constitutes and is a mutual mistake of the parties to the deed, with reference to the assumption of said mortgage indebted-

ness by this defendant.'' Subsequently the Kaltenbachs, then living in the State of New York, were made parties to this proceeding, and brought in by publication. They filed no pleading and made no appearance. The averments of Garrett's cross-bill were put in issue by a counter-pleading on the part of plaintiff.

After hearing the evidence the circuit court decreed foreclosure of the lien of the deed of trust. With respect to the Garretts, however, the court found that ''they did not assume or agree to pay the first deed of trust on the land or the notes secured thereby and sued on herein.'' It then adjudged that they go hence without day, etc. From the judgment in favor of the defendants Garrett, plaintiff prosecutes this appeal.

It will be noted that the judgment is silent as to the reformation of the deed from the Kaltenbachs to Garrett; no finding was made with respect to the issue of mutual mistake as a basis for relief. As the case, notwithstanding, hinges entirely upon a determination of that issue the evidence with reference thereto will be briefly summarized.

The sale of the land in question by Kaltenbach to Garrett was negotiated by one Hamel, a real estate agent. On a day in the latter part of February, 1921, Hamel took Garrett to see the farm. After an inspection by Garrett negotiations as to the purchase price were entered into. After a time an agreement was reached between Kaltenbach and Garrett, and a memorandum thereof in duplicate, written by Hamel, was signed by each. Later in the afternoon of the same day, after Hamel and Garrett had gone, Kaltenbach called by telephone D. D. Hamilton, an abstracter and conveyancer, at Marshfield, and directed him to prepare a deed from himself and wife to Garrett. Hamilton without having seen or heard read the written memorandum of the agreement which the parties had signed, but solely from the information given him verbally over the telephone by Kaltenbach, drew, or had drawn under his directions, the deed heretofore described and set out in part. He was familiar, however, with the incumbrances on the land, having procured the $25,000 loan from Kaltenbach.

The next day Kaltenbach and his wife went to Hamilton's office in Marshfield; the deed had been prepared; he read it and found that it conformed in all respects, so he testified, to the directions he had given Hamilton over the telephone; he and his wife then signed and acknowledged the deed and he left it with Hamilton to be delivered to Garrett upon the payment by the latter of the balance of the purchase price remaining after making certain deductions for incumbrances. A day or two later Garrett came to Hamilton's office and was shown the deed. According to Garrett's testimony: he took the deed and ''glanced over it;'' he thinks that he

noted the final clause—"subject to taxes, etc.;" he did not see the assumption clause; he handed the deed back to Hamilton and the latter read the instrument to him, he, Garrett, holding the abstract of the title before him in order to verify the correctness of the description of the land; Hamilton read all of the deed to him, except the assumption clause—he is positive that Hamilton did not read that; and that he did not know that that clause was in the deed until long afterward. After the inspection and reading just mentioned, Garrett gave Hamilton certain checks and then walked across the street to the county court house and there filed the deed for record.

The checks just referred to, as shown by the stubs offered in evidence by defendant Garrett, consisted of one to Hamilton for $2,069.35, being for interest on the $25,000 note and the first installment of the commission note; one to Hamel for $1750, being for the commission owing him by Kaltenbach for making sale of the farm; and one to Kaltenbach for $5,221.65, in payment of the balance of the purchase money.

As already stated, Garrett paid the two installments of the commission note as they became due, and also the interest on the $25,000 as it matured, up to and including that falling due on December 1, 1924. Sometime in 1925 he exchanged his equity of redemption in the property for an equity in another property, which he said was worthless. Land values had then so shrunken that his equity in the land deeded him by Kaltenbach had a speculative but no market value. Frederick to whom he conveyed it did not put his deed on record.

In May, 1926, one Clark, who was sent out from Kansas City to collect interest on the Kaltenbach and other farm loans in the southern part of the State, called upon Garrett at his place of business in Springfield, Missouri, and requested the payment of the interest on the $25,000 note which had become due December 1, 1925. In the course of the conversation between them Clark, according to his testimony, told Garrett that he, Garrett, had assumed such an obligation in the deed conveying the title to him, and that Garrett said in response: "Yes, I know that. The only thing I see to do is to foreclose. You had better do it as quick as you can, so I can get in there—take possession." As a witness in his own behalf Mr. Garrett denied making such a statement.

In August, 1926, pending negotiations between Garrett and the holder of the $25,000 note for an adjustment or compromise of the matter then in controversy, Garrett's personal liability for the payment of the note, he went to Herkimer County, New York, to secure the signatures of Kaltenbach and his wife to a statement, which shows on its face that it had been prepared by counsel. Mrs. Kaltenbach, who had been present when the farm sale agreement

was concluded between her husband and Garrett, declined to sign it. But Kaltenbach, after much persuasion on Garrett's part, finally signed the paper and made oath to it. The gist of the statement as a whole is contained in the following excerpts from it:

". . . Affiant further states that the terms of the trade as actually made between this affiant and the said W. L. Garrett was as above stated, that the said Garrett was to pay to this affiant the sum of ten thousand ($10,000) dollars for affiant's interest in said farm. That nothing was said at the time the trade was made, or at any other time, about the said Garrett assuming or agreeing to pay the mortgage indebtedness on the farm. . . .

"That affiant did not give any specific directions to the said Hamilton with reference to preparing the deed, as the said Hamilton was much more accustomed to preparing such instruments than was the affiant, which was the reason for having the deed prepared by him or his office. That the said Hamilton was fully informed as to the terms of the trade, which was as above stated, that the said Garrett was to pay this affiant the sum of ten thousand ($10,000) dollars for affiant's interest in the farm, and to pay also one of the commission notes and that this affiant did not state to the said Hamilton that the said Garrett had agreed to assume and pay the mortgage indebtedness, and nothing to that effect was at any time mentioned in affiant's presence. . . ."

On the trial evidence was heard pro and con as to the preliminary agreement of the parties preceding the making of the deed. The court tried to confine the evidence to the contents of the written memorandum, both parts of which had been lost or destroyed, but the witnesses made no distinction between the oral agreement reached and the one immediately thereafter set forth in the writing, in their minds they were one and the same thing. Defendant Garrett testified:

"Q. Go ahead and state in your own language the terms of that agreement between you and Mr. Kaltenbach. A. Well, as to the amount, I was to pay $10,000 in cash and also one of the commission notes. I finally offered them $10,000 and they haggled over that, but finally I offered to pay one of the commission notes amounting to $585, I think that was the amount of it.

"Q. Was there anything said about the mortgage on the farm, the first mortgage? A. Yes.

"Q. What was said about it? A. There was a mortgage of $25,000 on it. . . .

". . . Do you recall what was in the written contract? A. Yes, sir.

"Q. What was it? A. As I started to tell you, the amount, and then that I was to take it over subject to this mortgage.

"Q. Did it say anything about you assuming and agreeing to pay the mortgage? A. Not a word.

"Q. Was there anything said about that in said agreement between you and Mr. Kaltenbach? A. No, sir.

"Q. Or between his agent, Mr. Hamel, and you? A. No, sir.

"Q. Did either Mr. Kaltenbach or Mr. Hamel, either of them, ever mention to you anything about you assuming and agreeing to pay that mortgage? A. No, sir."

Hamel testified:

"Q. What were the terms of that original contract?

"THE COURT: You say it was in a written contract signed up? A. Yes, sir. It stated that Mr. Kaltenbach had sold his farm to Mr. Garrett and Mr. Garrett was to pay him $10,000 in cash and take the place subject to the $25,000 loan. . . .

"Q. Was there anything said in the written contract about Mr. Garrett assuming and agreeing to pay the $25,000 mortgage? A. No, sir, there was nothing said; that subject was never mentioned, about him assuming and agreeing to pay it."

And Kaltenbach (by deposition) testified:

"Q. Just tell what those specifications (of the contract) were, as best you can? A. Well, one was that the sale of the farm to Mr. Garrett for the price of $35,000 and $10,000 was to be paid in cash, and the other $25,000 was a loan to be assumed by Mr. Garrett, also provided that there was a commission note which Mr. Garrett agreed to pay one year later, and it also provided that we were privileged to live on the place until Mr. Garrett notified us to move; if we stayed on and he wished the place, he had to give us thirty days to move—Those are about, of course, some words in there. Right in the beginning of the contract I was to make a deed conveying the property and upon rendering this deed Mr. Garrett was to pay $10,000 cash and was to assume the balance—step right into my shoes, the same as I was, as we understood it at that time.

. . .

"Q. Are you able to give the specific language of that contract regarding this mortgage, if you can? A. Well, I don't recall the words, it was mentioned in the contract though that Mr. Garrett assume the mortgage—the mortgage and any farther than that, I don't remember that there was anything said about that mortgage. . . .

"Q. Now, to refresh your memory, didn't the contract say that it was subject to these mortgages? A. I don't remember the word 'subject' being used.

"Q. Do you remember that it wasn't used? A. Well, it just runs in my mind now that it was worded that Mr. Garrett assumed the loan.

"Q. You don't think you said anything about him agreeing to pay it? A. No.

"Q. Did the deed say anything about him agreeing to pay? A. I don't remember that.

"Q. What is your best memory with reference to it? A. It is said in the deed that he assumed the mortgage. . . .

"Q. Now, when do you first remember about the use of this word 'assumption' in the contract or deed? A. Well, I don't know that there was any first remembrance. It's been in my head ever since the deal was made, the purchaser of the farm assumed all of my responsibilities."

He further testified that he signed the affidavit heretofore referred to at Garrett's request, because Garrett represented to him that such an affidavit would discourage the loan company from bringing suit against him, Garrett, and because he, Kaltenbach, thought that the signing of such a paper would in no wise effect the original contract and deed.

The foregoing is the substance of the material evidence offered on the issue of mistake.

The statement of a few elementary principles will make it unnecessary to consider a number of questions discussed by counsel in their briefs.

(a) A deed, though signed by the grantor only, when delivered to and accepted by the grantee, becomes a contract in writing. As the terms of the contract are in writing the grantee's acceptance of the deed in which the contract is set out, and of which it forms a part of the consideration, is considered equivalent to the signature of the grantee to the contract. [Poage v. Railroad, 24 Mo. App. 199; Schmucker v. Sibert, 18 Kan. 104; Foster v. Atwater, 42 Conn. 244; Midland Railroad Co. v. Fisher, 125 Ind. 19.]

(b) Where parties have deliberately put their engagement into writing, in such terms as import a legal obligation without any uncertainty as to the object or extent of the engagement it is conclusively presumed that the whole of the engagement of the parties and the extent and manner of their undertaking, have been reduced to writing, and parol evidence is not permitted to vary or contradict the terms of such writing, or to substitute a new or a different contract for it. [10 R. C. L. 1018, sec. 209.]

(c) It is equally well settled that mistake, fraud, surprise and accident furnish exceptions to the otherwise universal doctrine above stated. Parol evidence may, therefore, in proper mode and in proper limits, be admitted to vary written instruments, upon the grounds of mistake, fraud, surprise and accident. [2 Pomeroy's Eq. Jur. (4 Ed.) sec. 858.]

(d) A court of equity may rescind a contract for a mistake which is unilateral—that is, a mistake on the part of one of the parties only. In such a case the whole contract is set aside, and the parties restored to their original positions. To warrant the reformation of a contract by altering or expunging some of the terms contained in it, there must be a mutual mistake, that is, a mistake shared in by both parties. [Green v. Stone, 54 N. J. Eq. 387.]

(e) "The rule applicable to all contracts, that prior stipulations are merged in the final and formal contract executed by the parties, applies, of course, to a deed based upon a contract to convey. When a deed is delivered and accepted as performance of a contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties. 'No rule of law is better settled than that where a deed has been executed and accepted as performance of an executory contract to convey real estate, the contract is *functus officio,* and the rights of the parties rest thereafter solely on the deed.' " [2 Devlin on Deeds (3 Ed.) 1570, sec. 850a.]

There is no question in this case as to the acceptance of the deed. It is conceded that it was delivered by the grantor and accepted by the grantee. The deed therefore was the final contract between them : all prior negotiations and agreements, oral and written, touching the sale and conveyance of the land were merged into it. Defendant Garrett alleges in his pleading that there was no meeting of minds as to the clause reciting the assumption of the mortgage debt by the grantee; that such clause was inserted in the deed by mistake. If Garrett, the grantee, was the only one of the parties laboring under such mistake at the time he accepted the deed, his sole remedy would be the rescission of the contract in its entirety, a remedy of which he has never attempted to avail himself. He further alleges by way of cross-bill, as a basis for the reformation of the deed, that the assumption clause was inserted by mutual mistake. Whether under the evidence he has made a case entitling him to such relief is the sole question in the case.

While all prior negotiations and agreements were merged in the deed as the final contract, evidence touching those matters was competent on the issue of mutual mistake. According to Garrett's testimony it was the agreement, first oral and then set forth in a written memorandum, that he was to pay Kaltenbach $10,000 in cash and also one installment of the commission note, $584, and receive a conveyance of the land subject to an incumbrance of $25,000 only. If such was the agreement, it clearly contemplated that Kaltenbach, in consideration of

the two sums mentioned, would pay and discharge all of the mortgage indebtedness except $25,000, the principal sum of the first mortgage note, and then convey the land to Garrett subject to that only. But in closing the transaction, at the time of the delivery of the deed, Garrett paid $9,041 in cash and took the land charged with liens securing a note for $25,000, with accrued interest thereon amounting to $375, and two installments of the commission note amounting to $1168. He could not have written the checks he did in that connection without knowing and consenting to this departure from what he said was the original agreement. One of the checks he gave, according to a notation made by him at the time, was for the specific purpose of paying all of the interest on the $25,000 note then due and the first installment of the commission note. After this application of such payment there was left standing against the land "a deed of trust to First Mortgage Trust Company for Twenty-five Thousand Dollars ($25,000) and a balance of a commission deed of trust to same parties (amounting to $1168)," as recited in the deed, and this he knew. The only thing, therefore, of which he may not have been advised and to which he may not have consented was the use in the deed of the words "assumes and agrees to pay" with reference to the mortgage indebtedness left standing.

Assuming that Garrett accepted the deed without knowledge of the assumption clause and that its insertion was as to him a mistake, what about Kaltenbach? Was he in ignorance of that provision of the deed? On the contrary he testified that he read the deed before signing it and that it conformed in all respects with the instructions he had given the scrivener, and further, that it was his understanding, and had been ever since the deal was made, that the purchaser of the farm assumed all of his responsibilities. From the mere fact, if a fact, that nothing whatever was said during the negotiations of the preliminary agreement, or in the agreement itself, about Garrett's assumption of any part of the mortgage indebtedness, it does not necessarily follow that the insertion of a stipulation to that effect in the deed was the result of a mutual mistake. Otherwise, the contract to convey and not the deed, the final contract, would be paramount.

The evidence offered to establish a mutual mistake as the ground for reforming a written instrument must be most clear and convincing. [Dougherty v. Dougherty, 204 Mo. 229, 239, 102 S. W. 1099.] Courts of equity do not grant the high remedy of reformation upon a probability, or even upon a *mere* preponderance of evidence, but only upon a certainty of the error. [2 Pomeroy's Eq. Jur. sec. 858.] The evidence tendered in this case in support of the allegations of *mutual* mistake does

not measure up to the requirements just indicated. Reformation of the deed must therefore be denied.

The deed remaining intact as to the assumption clause, the plaintiff is entitled in this action to recover from the defendant Garrett the unpaid portion of the mortgage debt which the clause recites he assumed and agreed to pay. [Crone v. Stinde, 156 Mo. 262, 55 S. W. 863; Fitzgerald v. Barker, 70 Mo. 685; Heim v. Vogel, 69 Mo. 529.] The judgment of the circuit court is accordingly reversed and the cause remanded to that court with directions to enter judgment in favor of plaintiff against defendant Garrett, and also foreclosing the deed of trust—all as prayed in the petition, the judgment against defendant Garrett to be credited with the net proceeds of the sale of the land under the foreclosure. All concur.