**NORTH KANSAS CITY SCHOOL DISTRICT OF CLAY COUNTY, Missouri, presently known as School District #74, in said County, and Robert C. Bates, William C. Davidson, Donald E. Ewing, Gene Harris, E. L. Lewis and Raymond R. Finch, constituting the Board of Education of said School District, Appellants,**

**v.**

**J. A. PETERSON–RENNER, INC., a Missouri Corporation, James C. Davidson, Trustee, and Clarence G. Renner and Anna E. Renner, husband and wife, Respondents.**

No. 49456.

Supreme Court of Missouri

Division No. 2.

June 4, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied July 8, 1963.

Conn Withers, Liberty, Edward T. Matheny, Jr., Donald L. Dorei, Caldwell, Blackwell, Sanders & Matheny, Kansas City, for appellants.

James C. Davidson, North Kansas City, for respondents Clarence G. Renner and Anna E. Renner.

James E. Campbell, Keith Martin, Campbell & Clark, Kansas City, for respondent, J. A. Peterson-Renner, Inc.

STOCKARD, Commissioner.

In this condemnation suit the North Kansas City School District of Clay County (hereafter referred to as the "School District") has appealed from a judgment for defendant-landowners in the amount of $133,615.51, and asserts, among other things, that defendants are entitled to no more than $67,973.20. Thus the amount in dispute exceeds $15,000 and this court has appellate jurisdiction.

The School District seeks by condemnation to obtain title to approximately 34 acres of land comprising the southeast corner of a 148-acre tract (hereafter referred to as

the "Renner tract") belonging to or in which the defendants have an interest. The commissioners appointed by the circuit court awarded defendants $94,966. All parties filed exceptions. In the trial on the issue of damages the jury verdict was for $131,200 and after the addition of interest pursuant to Civil Rule 86.10, V.A.M.R., and Section 523.045 (all statutory references are to RSMo 1959, V.A.M.S.), judgment was entered in the amount of $133,615.51. The School District has appealed. We are first faced with defendants' "Motion to Dismiss Appeal for Lack of Jurisdiction" on the ground that the School District has not paid the amount of the commissioners' award or the jury verdict, or any part of either, into court.

Defendants contend that this court should rule that the School District "constructively abandoned" the condemnation and for that reason there is no controversy before the court, or that it should rule that the School District "was bound to pay the jury award prior to appeal to give this court jurisdiction" and the failure to do so "precludes an abandonment and an appeal * * * and makes the judgment of the trial court final."

■■■ The legislative grant of the power of eminent domain to the School District to condemn land for school purposes is not questioned. See Section 165.100. The *procedure* to be followed in the exercise of that power is now governed by Civil Rule 86, insofar as applicable. Union Electric Company v. Jones, Mo., 356 S.W.2d 857, 859. Civil Rule 86.06 provides for the appointment of commissioners to assess the damages which the owners may sustain by reason of such appropriation, and it further provides that "[u]pon making payment to the clerk of the amount assessed, * * * it shall be lawful for the condemner to take possession and hold the interest in the property so appropriated for the uses [condemned]; and, upon failure to pay the assessment aforesaid within ten days after it becomes final, or, in the case of a municipal-

ity, within thirty days thereafter, the court may, upon motion and notice by the party entitled to such damages, enforce the payment of the same by execution, unless the condemner shall, within said ten or thirty day period, elect to abandon the proposed appropriation of any property, by an instrument in writing to that effect, * * * and to so much as is thus abandoned the assessment of damages shall be void." Civil Rule 86.08 provides that if either party files exceptions to the report of the commissioners within the time therein provided the issue of the amount of damages shall be submitted to a jury, or if a jury be waived, to the court, to be tried as in ordinary cases of inquiry of damages. This necessarily means that when exceptions to the commissioners' report are filed the award of damages by the commissioners, as long as the exceptions are not withdrawn or dismissed, cannot become final. There is no express provision in Civil Rule 86 pertaining to the right of the condemner to abandon the condemnation subsequent to a trial before the court or jury on the issue of damages. Civil Rule 41.06 provides that if no procedure is specially provided by rule, the court shall proceed in any lawful manner consistent with the applicable statute, or statutes if any, and precedent, and not inconsistent with the rules. In the absence of Civil Rule 86, the procedure to be followed in this condemnation proceeding would be governed by Sections 523.010 to 523.100. See Section 165.100. We find that Section 523.040 also expressly authorizes the condemner to abandon the condemnation within ten days after the award of the commissioners becomes final, but like Civil Rule 86, neither it nor the other applicable sections contain any express provision concerning the right of the condemner to abandon the condemnation subsequent to jury or court trial. However, the courts have construed the overall purpose of Chapter 523, and in State ex rel. Hilleman v. Fort, 180 Mo. 97, 79 S.W. 167, the court ruled as follows: "It is true the right to abandon is spoken of only in section 1266 [now Section 523.040], and that that section relates to the assessment by the

commissioners. But these considerations are not conclusive of the question, for section 1268 [now Section 523.050] is in pari materia with section 1266, and must be read in connection with it, and the true meaning and purpose of the lawmakers must be gathered from the whole act, including all its parts, its context, spirit, and object, as well as the words, or the location in any one section or paragraph of the act of the particular clause or words under consideration. * * * Read in this way, we find a right to abandon is given within 10 days after the damages are assessed. We also find that the damages are to be assessed in the first place by a board of commissioners. Then * * * if either party requests it, by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages; and this, of course, involves the usual power of the court to grant a new trial after the verdict and the other ordinary incidents of a trial in court, including a right of appeal, even though that right is not even referred to in the act." In the Fort case no appeal was taken from the judgment, and the only issue was whether the condemner could abandon the condemnation within ten days after verdict. It was stated that "the true reason and meaning of the law" authorized the abandonment and the denial of such right "would practically nullify" the provision which gives a right to file exceptions to the report of the commissioners. In the situation presented by this case the denial of the right to abandon the condemnation after an appeal would practically nullify the right of appeal and would be contrary to the obvious intent and purpose of the statutory provisions. Prior to the adoption of the present Civil Rules, by reason of the applicable statutes and the judicial construction thereof, the condemner could pay into court the amount of the damages and thereby acquire title to the land or interest condemned, but having done so he could not subsequently abandon the condemnation. Nifong v. Texas Empire Pipe Line Co., 225 Mo.App. 1134, 40 S.W.2d 522. However, the condemner could refrain from paying into court the amount of the award until the amount was finally adjudicated and then determine whether to abandon the condemnation or take title to the interest condemned at that price. State ex rel. Hilleman v. Fort, supra; State ex rel. State Highway Commission v. Schutte Investment Company, Mo., 334 S.W.2d 241; Center School District No. 58 of Jackson County v. Kenton, Mo., 345 S.W.2d 120. This right to an election to abandon is particularly important to a public body such as a school district because of the possible limitation of funds available through bond issues for the purchase of land. Whether we conclude that the above result is proper from a reasonable construction of Civil Rule 86, and we think it is, or whether we conclude that pursuant to Civil Rule 41.06 we should look to the applicable statutes and precedent, the School District in this case was not required to elect within ten days after the jury verdict to abandon the condemnation or to take title to the land. Therefore, the School District did not "constructively abandon" the condemnation and it was not "bound to pay the jury award prior to appeal to give this court jurisdiction." The motion to dismiss the appeal is overruled.

The principal issue on this appeal pertains to an instruction authorizing the jury to take into consideration in determining the value of the land taken the "right" of defendants to use a sewer disposal plant on adjoining property. Certain additional facts are essential to the issue.

It is conceded that the highest and best available use to which the Renner tract is adaptable is for a residential development, although at the time the condemnation suit was commenced the land had not been platted and development work had not been started. In August 1960 J. A. Peterson-Renner, Inc., acquired the Renner tract, along with several others, from Byers-Daniels Development Company. At that time Byers-Daniels had almost completed the construction of the Meadowbrook North sewer disposal plant located about 300 feet west of the Renner tract. Mr. J. A. Peter-

son testified that he negotiated on behalf of J. A. Peterson-Renner, Inc., for the purchase of the Renner tract and that when he purchased the land he also purchased "some interest" in the sewer plant. He then read to the jury a provision contained in the contract of purchase as follows: "It is further agreed that as a part of the consideration, you [J. A. Peterson-Renner, Inc.] may make to the Meadowbrook North sewer disposal plant 466 connections. You will pay for such connections the sum of $93,200. These payments will be made in accordance with the contract between Byers-Daniels Development Company and Municipal Services, Inc., which provides one-half of said sum shall be paid upon completion of the sewer disposal plant and the remaining one-half upon acceptance of the plant by all governmental authorities. It is agreed between the parties that permission to make connections to Meadowbrook North sewer disposal plant shall not be granted to any persons other than the parties hereto or their assigns as long as said plant is under the control of the parties hereto. We further agree that the plant will not be delivered to the City of Gladstone until a suitable ordinance is introduced and passed, guaranteeing to you a total of 466 connections, and guaranteeing to us a total of 634 connections."

On June 21, 1961 the City of Gladstone enacted Ordinance No. 135 whereby it "agreed to accept ownership of said primary-secondary sewage treatment plant and the operation thereof," and it authorized the mayor to enter into a contract on behalf of the city with J. A. Peterson-Renner, Inc., and Byers-Daniels Development Co. for the acceptance of ownership of the sewage treatment plant. That contract is lengthy and we shall mention only a few of its provisions. The city agreed that "of the 1170 domestic connections or equivalent herein referred to, Byers-Daniels Development Co. or its successors or assigns shall be entitled to 704 such domestic connections or equivalent and J. A. Peterson-Renner, Inc., or its successors or assigns shall be entitled to 466

such domestic connections or equivalent." It was further provided that the city would "refuse permission to any other person, firm, corporation, association or copartnership of persons to connect to said plant until said 1170 domestic connections or equivalent are made without the written consent of Byers-Daniels Development Co. and J. A. Peterson-Renner, Ind. unless the capacity of said plant is increased to compensate for such additional connections prior to allowing said additional connections to be made." A further provision in the contract was that Byers-Daniels Development Co., its successors or assigns, reserved the right to "allow the North Kansas City School District or any one else it authorizes to connect to said sewage treatment plant and the plant capacity used by said school or other party or parties authorized to connect to said plant by Byers-Daniels Development Co. shall be charged against the 704 connection rights reserved to Byers-Daniels Development Co." Also, until 250 domestic connections or equivalent have been made, the city reserved the right to "assess the property owner the sum of $2.00 per month per domestic connection" to be used to maintain and operate the sewage treatment plant, and during said time if any deficit should occur Byers-Daniels Development Co. and J. A. Peterson-Renner, Inc., or their successors or assigns, should pay the amount of the deficit to the city "in direct proportion to the number of connections to which each is entitled less any connections made and assessed."

A preliminary survey for the development of the Renner tract by the owner prior to J. A. Peterson-Renner, Inc., resulted in plans for 466 homes, and the cost of $93,200 for the sewer connections was based on a cost of $200 per home or residential lot. J. A. Peterson-Renner, Inc., made additional studies and determined that 477 lots could be developed, but apparently the available sewer connections remained at 466. A total of 125 lots or homesites would be lost to J. A. Peterson-Renner, Inc., by the removal of the 34 acres sought to be

condemned by the School District leaving 352 homesites or lots. Canceled checks were introduced in evidence to show that J. A. Peterson-Renner, Inc., had paid the $93,200 for the sewer connections.

The trial court gave Instruction No. 3 as follows: "You are instructed that the defendant landowner had the right to use the sewer plant mentioned in evidence in the development of the 148.102 acres mentioned in evidence, and you are further instructed that you may consider said right in determining the fair market value of the land taken, because just compensation is based upon what the landowner loses by having his property taken, and not by what the plaintiff gains." The School District assigns error in the giving of this instruction because (a) "There was no evidence that any of the defendants had the right to use the sewer plant, inasmuch as the right of defendant landowner depended upon a void and ineffective attempt by the City of Gladstone to delegate control to and vest rights in such defendant," and (b) if such right existed, it was a right personal to defendant landowner and in no way a part of or appurtenant to the condemned land, and hence not to be considered in determining the fair market value of the land taken.

In determining whether a particular instruction is prejudicially erroneous it is well settled that all of the instructions must be read and considered together as a single charge. St. Louis Housing Authority v. Bainter, Mo., 297 S.W.2d 529, 533. In a condemnation case it is proper to advise the jury by written instructions what elements it may consider in estimating or arriving at the damages or value of the property taken or damaged. State ex rel. State Highway Commission of Missouri v. Haid, 332 Mo. 606, 59 S.W.2d 1057, 1060; Siemers v. St. Louis Electric Terminal Ry. Co., 348 Mo. 682, 155 S.W.2d 130, 137. We should look first to the substance of Instruction No. 4 given at the request of the defendants which was as follows: "In determining the fair market value the jury should take into consideration the location of the property, the uses for which it is suitable at such location, its available utilities, *sewers,* and municipal services, if any, the proximity to places of employment, shopping centers, roads, highways, and other means of transportation, if any, and all the uses to which it may best be applied or for which it is best adapted, having regard not alone for the existing uses of the property, but also such uses which may be reasonably expected in the near future." (Italics added.) By this instruction the jury was correctly and properly told that the availability of sewers should be considered by it in determining the value of the land sought to be taken by condemnation. State ex rel. Board of Regents for Central Missouri State College v. Moriarty, Mo.App., 361 S.W.2d 133. Such availability would have a direct bearing on the value of the land for its admittedly highest and best available use, that is, for development as a residential area. In view of this instruction, to which no objection is made on this appeal, what was the purpose of Instruction No. 3? It obviously told the jury, and presumably that was its purpose, that as a matter of law defendants "had the right to use the sewer plant," and that in addition to the *availability* of sewers as affecting the market value of the land taken, the jury should also take into consideration the additional factor of the loss of "said right" because just compensation is based upon what the landowner loses by having his property taken and not by what the School District gains. In view of the evidence that J. A. Peterson-Renner, Inc., had paid $93,200 for "said right," any reasonable jury would understand from Instructions No. 3 and No. 4 that in determining the market value it should add to the value of the land taken the increase in value resulting from the availability of the sewer facilities, and then add an additional amount because J. A. Peterson-Renner, Inc., would lose a portion of the $93,200 investment in making the sewers available. We must note, however, that the School District's challenge to Instruction No. 3 is not spe-

cifically directed to this objectionable feature of the instruction. Its specific objection is that the sewer facility had been transferred to the City of Gladstone, and that the contract which purported to give J. A. Peterson-Renner, Inc., a "right" to use the sewer facility to the exclusion of the public generally was contrary to public policy and void in this respect. The School District then contends that the court erred in instructing the jury that J. A. Peterson-Renner, Inc., was entitled to compensation for the loss of a "right" which did not exist.

■ The School District relies on the general rule stated in Yokley, Municipal Corporations, § 475, as follows: "While a city may grant permission for the use of its sewers, it must retain control of them, and may not contract away such right of control. * * * It has been held to be against public policy for a municipality to permit private persons to acquire or retain a proprietary interest in public sanitary sewer lines. It is felt that such ownership or interest would condition the rights of public authorities to exercise control thereof and to extend to others equally entitled to sewer service permission to connect to such sewers. If private citizens were thus allowed to assert ownership piecemeal of various parts of a city sewage system, an intolerable condition would soon exist."

No Missouri case has been found expressly ruling this question, but the above general principle was announced in Warren v. Bradley, 39 Tenn.App. 451, 284 S.W.2d 698. There a municipality constructed a sanitary sewer in "Warren Addition" which was being developed by the plaintiff and who agreed to pay the entire cost of the sewer, provided that for a period of twenty years he, his heirs, devisees and assigns would have the exclusive right to connect onto the sewer free of charge, and also have the right to assign such privilege and make a charge therefor. The defendant, owner of a residence in "Warren Addition," attempted to make a connection into the

sewer and plaintiff sought an injunction. The court held the agreement between plaintiff and the municipality to be void and that plaintiff "had no right, title, interest or claim in this public property." The case of Ericksen v. City of Sioux Falls, 70 S.D. 40, 14 N.W.2d 89, is particularly in point. There the city built a sewage plant designed to receive industrial sewage, and by reason of the payment of certain expenses by the Morrell Company the city agreed that it could discharge its sewage into the city system and plant for a period of fifteen years. This contract or agreement was held void, and the court said: "The supervision and regulation of the sewers is a police function of the city. Therefore, in granting permission for the use of the sewers in the first instance and for the continuing use thereof, the city must at all times retain control, and any attempt by way of contract to deprive the city of that control is void. The police power of the city cannot be bargained away by contract, but must at all times be available for use to meet such public needs as may arise. * * * No one has any vested rights in the use of the sewers, nor can the city grant such a vested right." Other cases and authorities to the same effect are State ex rel. Gordon v. Taylor, 149 Ohio St. 427, 79 N.E.2d 127; City of Vernon v. City of Los Angeles, Cal.App., 275 P.2d 72; Lamar Bath House Co. v. City of Hot Springs, 229 Ark. 214, 315 S.W.2d 884, appeal dismissed, 359 U.S. 534, 79 S.Ct. 1137, 3 L.Ed.2d 1028; Weaver v. Canon Sewer Co., 18 Colo.App. 242, 70 P. 953; Shawnee v. Thompson, Okl., 275 P.2d 323; 64 C.J.S. Municipal Corporations, § 1805; McQuillin, Municipal Corporations, 2nd Ed., § 31.31. Although not involving a comparable factual situation, the following Missouri cases announce the general rule that a municipal corporation may not contract away its governmental functions and powers pertaining to municipal facilities. Aquamsi Land Co. v. City of Cape Girardeau, 346 Mo. 524, 142 S.W.2d 332; Stewart v. City of Springfield, 350 Mo. 234, 165 S.W.2d 626.

Defendants cite State ex rel. State Highway Commission v. Bruening, Mo., 326 S.W.2d 305, and City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, in support of the general proposition, with which we agree, that all important factors relating to the value of the land should be considered, including a special adaption for a particular use. Defendants also cite State ex rel. Board of Regents for Central Missouri State College v. Moriarty, Mo.App., 361 S.W.2d 133, and St. Louis Housing Authority v. Bainter, Mo., 297 S.W.2d 529, in support of their contention that one of the factors which may properly be considered in determining fair market value is the availability of sewers, and it is argued that in this case "sewage disposal was one of the necessary factors which the jury was entitled to consider." We agree with these cases and with the general rule that availability of sewers is a factor to be considered by the jury in determining value, but these cases go no further than that. Instruction No. 4 expressly submitted that factor to the jury for its consideration, and the School District does not object to it. No case is cited by defendants which tends to refute the School District's contention that Instruction No. 3 authorized the jury to award damages for the loss of a "right" which did not exist, and that it was error to do so.

On June 21, 1961 title to and the operation of the sewage disposal plant was turned over to the City of Gladstone, and we cannot escape the conclusion that from that time on it was municipally owned property and the city could not by contract surrender its police powers to control and regulate the public sewers of the city of which this plant was a part. Yokely, Municipal Corporations, § 475; McQuillin, Municipal Corporations, 3rd Ed. § 31.29; 64 C.J.S. Municipal Corporations § 1805; Warren v. Bradley, supra; Ericksen v. City of Sioux Falls, supra. It is true that J. A. Peterson-Renner, Inc., had the "right" to use the sewer plant the same as other citizens of the city, but by reason of the

contract with the city it had no greater right than any other citizen. However, in view of the evidence and the manner of its presentation, Instruction No. 3 clearly and unquestionably told the jury that it should award J. A. Peterson-Renner, Inc., damages for taking a portion of an exclusive right, which did not exist, to use the municipally owned sewer plant for which a proportionate part of $93,200 was paid, in addition to awarding as damages the enhanced value to the land resulting from the availability of the sewage disposal facilities. For this reason the instruction was prejudicially erroneous.

The School District also contends that reversible error resulted from the giving of Instruction No. 1 in which it was stated that "under the Constitution of the United States and under the Constitution of the State of Missouri, private property cannot be taken from the owner for public use without just compensation being paid to the owner * * *." In City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839, 844, this court said that language in an instruction in a condemnation case such as quoted above "is abstract in nature, immaterial to the precise issue on trial, and unnecessary. It is better and safer practice to omit this material in drafting instructions in this type of case." It was then added that the instruction does not constitute reversible error unless it appears that the complaining party has been prejudiced or the jury misled thereby. We need not determine whether the instruction was prejudicial in this case, but upon a new trial the parties would be well advised to consider the caveat in the Vasquez case.

The judgment is reversed and the cause remanded.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.