Collins F. KINDRED, et
al., Respondents,

v.

CITY OF SMITHVILLE,
Missouri, Appellant.

No. WD 68831.

Missouri Court of Appeals,
Western District.

July 21, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 1, 2009.

Application for Transfer Denied
Oct. 6, 2009.

Bradley C. Nielsen, Esq., Kansas City, MO, for appellant.

Jerome E. Brant, Esq., Liberty, MO, for respondent.

Before DIVISION THREE: HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS and LISA WHITE HARDWICK, Judges.

LISA WHITE HARDWICK, Judge.

The City of Smithville (City) appeals the circuit court's judgment ordering specific performance of an easement agreement between the City and Collins Kindred and Loula Kindred (Kindreds). The City contends the easement agreement was void *ab initio* and unenforceable because it did not comply with Section 432.070, RSMo 2000.[1] For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

On July 7, 1969, the City's Board of Aldermen approved a resolution granting the Smithville School District the right to install a water line to serve educational facilities that were under construction. The resolution, signed by the Mayor of Smithville, was expressly contingent upon the City's receipt of a duly-executed easement for utility line purposes. Following approval of the resolution, the City approached the Kindreds and requested an easement across their property for construction of water and sewer lines.

On July 10, 1969, the Kindreds signed a written easement agreement presented to them by the City. Pursuant to the agreement, the Kindreds granted the City a perpetual easement and right to enter upon their property for the purposes of installing, repairing, replacing, and maintaining water and sewer pipes and lines. The Kindreds intended the easement for the public's use and benefit, including the construction of utility lines for the Smithville School District. The City did not pay

---

1. All statutory references are to the Revised Statutes of Missouri 2000.

the Kindreds for the easement. Instead, the agreement provided: "It is agreed between the parties hereto that Grantors shall have the right to make connections to the water and sewer lines installed by the Grantee on the above described property without the payment of any fee to the Grantee for the right to make such connections." The easement agreement stated that it was binding upon the parties, their heirs, and assigns. The City kept a copy of the easement agreement on file.

After the Kindreds signed the easement agreement, on August 4, 1969, the City's Board of Aldermen unanimously approved a resolution allowing the Smithville School District to build a sewer on the City's easement. Thereafter, the City and/or the School District constructed, installed, and maintained water and sewer lines on the Kindreds' property.

In the four decades since the utility lines were installed on the Kindreds' property, the School District has constructed new schools and expanded the buildings that use the water and sewer lines across the easement. The number of students attending the schools connected to these lines has increased from approximately 450 to 1700. Additionally, the City has granted five other property owners access to the water and sewer lines.

In 2002, the Kindreds approached the City and requested access to the water and sewer lines pursuant to the easement agreement. The Kindreds wanted to develop sixteen residential lots on their property. The City refused to grant the Kindreds access to the water and sewer lines, stating that there was no remaining capacity. In particular, the City told the Kindreds that it had determined the sewer line could not handle additional connections and flow.

After the City denied the Kindreds' request to access the utility lines running across the easement, the Kindreds filed a petition asserting claims for specific performance or, in the alternative, breach of contract. The case was tried to the circuit court on stipulated facts and brief testimony from Collins and Loula Kindred.

The court ruled in favor of the Kindreds and ordered specific performance of the easement agreement. In its judgment, the court found that the easement was in the nature of a deed, signed only by the grantors, the Kindreds. Because the City was aware of the conveyance and did not dissent, and the conveyance was positively beneficial to it, its acceptance was presumed. Moreover, the court found that the City accepted the easement by its use in constructing, installing, and maintaining water and sewer lines over the Kindreds' property and allowing the School District and other third parties to hook onto the lines. The City appeals the judgment.

### ANALYSIS

The City contends the circuit court erred in granting judgment in favor of the Kindreds because the easement agreement was unenforceable and void *ab initio*. The City argues that the agreement failed to comply with Section 432.070 in that it was never authorized or signed by the City, and it addressed matters outside the City's scope of powers.

Our review of this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We must affirm the judgment of the circuit court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

### Applicable Law

Section 432.070 contains the requirements for contracts with cities and other governmental entities:

No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

■ "Section 432.070 was enacted to preclude parties who have performed services for a municipality or county or other governmental entity without entering into a contract from subsequently recovering the value of those services based upon an implied contract." *Investors Title Co. v. Hammonds,* 217 S.W.3d 288, 294 (Mo. banc 2007). Thus, to hold a municipality liable for payment for such services, the statute requires that the contract be executed in writing before the service is performed and the consideration be expressly stated in the written contract. *Id.* The "manifest purpose" of the statute is to ensure that the essential terms of the contract are not "left in doubt, or to be determined at some future time, but shall be fixed when the contract is entered into." *Id.* (internal quotation marks omitted).

■ A contract that fails to comply with Section 432.070 is void *ab initio,* not merely voidable. *Gill Constr., Inc. v. 18th & Vine Auth.,* 157 S.W.3d 699, 708 (Mo. App.2004). The statutory requirements are mandatory, not directory. *Id.* In some circumstances, however, substantial compliance with the statute may be sufficient. *Pub. Water Supply Dist. No. 16 v. City of* *Buckner,* 44 S.W.3d 860, 864 (Mo.App. 2001).

## The City's Powers or Express Authority

■ The City first argues that the easement agreement does not comply with Section 432.070 because it was not authorized by the City. The City asserts the Board of Aldermen's minutes and resolutions do not provide "clear and definite" authority for the easement or the consideration the City gave to the Kindreds for the easement, which is the right to connect to the lines without the payment of a connection fee.

Section 432.070 provides that a contract with a city must be "within the scope of its powers *or* be expressly authorized by law." (Emphasis added.) The use of the word "or" means that this requirement is satisfied if the contract is either within the scope of the City's powers or expressly authorized by law.

■ Looking first at the scope of the City's powers, we note that state law grants all cities the power to erect a waterworks system and the authority to construct, improve, and extend a sewerage system. §§ 91.010 and 250.010.1. As a fourth-class city,[2] the City has the power to "receive and hold property, both real and personal, within such city . . . and may purchase, hold, lease, sell or otherwise dispose of any property, real or personal, it now owns or may hereafter acquire." § 79.010. A fourth-class city also has the power to purchase easements as necessary to operate its waterworks system. § 91.110. Additionally, board of aldermen of fourth-class cities "may acquire by purchase, donation or condemnation," the right-of-way for underground water pipes and other utility lines. § 88.773.2. These

2. We take judicial notice that the City incorporated in 1867 as a fourth-class city. § 79.010; Official Manual, State of Missouri 2007–2008, p. 888.

statutes demonstrate the legislature's intent to confer upon cities the power to acquire easements or other interests in real property upon which they can install public utility lines. Hence, the City's acquisition of an easement across the Kindreds' property for the purpose of installing water and sewer lines was within the scope of this power.

The City argues that this particular easement was outside the scope of its powers because the agreement granted the Kindreds the right to connect to the public utility lines without the payment of any connection fees. It is clear, however, that the Kindreds agreed to give the City access to their property in exchange for obtaining connection rights to the water and sewer lines. This term of the easement was an inducement to the Kindreds' granting the easement and, therefore, constituted consideration. *See* BLACK'S LAW DICTIONARY 324 (8th ed.2004) (defining consideration as "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee; that which motivates a person to do something"). In empowering cities to acquire interests in land to be used for public utilities, the statutes specifically permit cities to purchase such interests, which means to obtain them in exchange for consideration. *See id.* at 1270 (defining "purchaser" as "[o]ne who obtains property for money or other valuable consideration"). The City was within the scope of its powers in exchanging consideration for the easement.

Nevertheless, the City contends that this particular consideration was outside the scope of its powers because, in giving the Kindreds the right to connect to the sewer and water lines without the payment of connection fees, the City contracted away its right to maintain control of its sewers and essentially gave the Kindreds

"unfettered access" to the sewer lines. Relying on *North Kansas City School District v. J.A. Peterson–Renner, Inc.,* 369 S.W.2d 159, 165 (Mo.1963), the City argues that this provision is void as contrary to public policy because a city cannot contract away its rights and obligations pertaining to municipal facilities and cannot permit private persons to acquire a proprietary interest in such facilities.

In the contract at issue in *J.A. Peterson–Renner,* the city purported to give a developer the exclusive right to use one of the city's sewer disposal plants. *Id.* at 163. The city agreed that it would refuse permission to any other party to connect to the plant unless the developer consented, and the city also gave the developer the right to authorize any party it chose to connect to the plant. *Id.* The Missouri Supreme Court held that the "city could not by contract surrender its police powers to control and regulate the public sewers of the city." *Id.* at 166. Moreover, the city could not give the developer the exclusive right to use the plant because a city cannot grant one citizen a greater right to the sewer plant than any other citizen. *Id.*

Unlike the contract in *J.A. Peterson–Renner,* the easement agreement here did not give the Kindreds any control or authority over the water and sewer lines. The agreement merely gave the Kindreds the right to connect to the lines. This right was no greater than the right granted to any other citizen.

The situation here is similar to that in *Morgan v. City of Rolla,* 947 S.W.2d 837 (Mo.App.1997). Like the easement agreement in this case, the easement agreement in *Morgan* gave the landowners the right to connect to the sewer line running across their property without the payment of any connection fee. *Id.* at 840. Our court held that, in granting this right, the city did not contract away or surrender its police pow-

ers to control and regulate its sewer system. *Id.* at 841.

The City contends *Morgan* is distinguishable because the easement agreement in *Morgan* specifically provided that the landowners' right to connect was subject to the city's regulations as to the "safe, proper and sanitary" operation of its sewer system. *Id.* at 840. There is no indication in *Morgan* that the landowners' connecting to the sewer system would jeopardize the safe, proper, and sanitary operation of the city's sewer system. *See id.* at 841 n. 2. The City argues that, in this case, the safe, proper, and sanitary operation of the sewer system would be jeopardized by the City's permitting the Kindreds to connect to the system because there is no capacity remaining for the Kindreds. To handle the increased capacity proposed by the Kindreds, the City argues that it "will be forced to build a new sewer system," thereby depriving it of control over its sewers.

Although the City claims that the sewer line running across the Kindreds' property does not have the capacity to handle additional connections and flow, the City presented no evidence to support this claim. The City did not present any expert testimony as to the capacity of the sewer line. The record does not support the City's contention that the safe, proper, and sanitary operation of the sewer system would be jeopardized by the Kindreds' proposed connection. The City did not contract away or surrender its police powers to control and regulate its sewer system when it gave the Kindreds the right to connect to the water and sewer lines without the payment of a connection fee in exchange for the easement. The easement agreement, including its consideration, was not outside the scope of the City's powers.

**Subscription**

◼ The City next argues that the easement agreement violated Section 432.070

because it was not "subscribed by the parties thereto." As the City notes, Missouri courts have recognized that the word "subscribe" "literally means '[t]o sign at the end of a document.'" *Gregg v. Georgacopoulos,* 990 S.W.2d 120, 125 (Mo.App.1999) (quoting BLACK'S LAW DICTIONARY 1427 (6th ed.1990)). Because only the Kindreds, and not the City, signed the easement agreement, the City argues that the easement agreement was not subscribed to by both parties and must be declared void.

The City's argument fails to consider the nature of the contract in this case. The easement agreement conveyed to the City an interest in the Kindreds' real property, specifically, a perpetual easement and right to enter upon a certain portion of their land for the purpose of installing and maintaining water and sewer pipes and lines. A written instrument that conveys an interest in realty from one person to another and that is signed by the grantor and delivered to the grantee is a deed. BLACK'S LAW DICTIONARY 444 (8th ed.2004).

◼ Section 442.130 requires only that a deed be subscribed by the grantor and acknowledged or proved and certified. Once a grantee receives delivery of the deed and accepts it, the terms of the deed are then enforceable against both the grantor and grantee. This is because " '[a] deed, though signed by the grantor only, when delivered to and accepted by the grantee, becomes a contract in writing.' " *Blackburn v. Habitat Dev. Co.,* 57 S.W.3d 378, 388 (Mo.App.2001) (quoting *Employers' Indem. Corp. v. Garrett,* 327 Mo. 874, 38 S.W.2d 1049, 1053 (1931)). "As the terms of the contract are in writing[,] the grantee's acceptance of the deed in which the contract is set out, and of which it forms a part of the consideration, is considered equivalent to the signature of the grantee to the contract." *Garrett,* 38 S.W.2d at 1053. The essential elements of a deed are: "(1) names of the parties

thereto, (2) words of grant, (3) description of the property, (4) execution and delivery by the grantor, and (5) acceptance by the grantee." *Celtic Corp. v. Tinnea,* 254 S.W.3d 137, 142 (Mo.App.2008) (internal quotations and citations omitted).

In this case, the easement agreement—which the City proposed and presented to the Kindreds—contained all of the essential elements of a deed. The agreement stated that the Kindreds, specifically referred to as the grantors, granted to the City, the grantee, "the perpetual easement and right to enter upon the lands of the Grantors located in Clay County, Missouri and described as follows[.]" The agreement then set out the legal description of the property. The Kindreds signed the agreement, and their signatures were notarized. The agreement was delivered to the City, as the City admitted that it kept a copy of the document on file. The City clearly accepted the agreement, as it installed water and sewer lines across the easement and has continued to maintain the utility lines on the Kindreds' property for four decades. Under these circumstances, the actual signature of a City official was not required to make the easement agreement a valid deed.

**Substantial Compliance with Section 432.070**

 The easement agreement contained all of the essential elements of a valid deed. The underlying transaction—the granting of an easement in exchange for consideration—was not illegal or outside the scope of the City's powers. The easement agreement was made upon a consideration wholly to be performed subsequent to the making of the contract. The terms of the easement agreement, including the consideration, were in writing,[3] and the writing was dated when made. The easement agreement substantially complied with Section 432.070.

The next issue, then, is whether substantial compliance is sufficient under the circumstances to render the easement agreement enforceable. In determining whether Section 432.070 precluded recovery on the contract at issue in *Hammonds,* the Missouri Supreme Court considered the purpose of the statute and whether enforcement of the contract at issue would frustrate that purpose. 217 S.W.3d at 295.[4] The Court noted that the purpose of Section 432.070 is to prevent parties who have performed services for a municipality without entering into a written contract from later recovering the value of those services based upon a theory of implied contract. *Id.* at 294. Therefore, the statute ensures that the terms of the contract are fixed and in writing before the service is performed. *Id.* "This was one of the precautions taken to prevent extravagant

**3.** That all of its terms, including the consideration, were included in the agreement distinguishes this case from two other cases involving the application of Section 432.070 to contracts conveying land interests to municipalities. In both *Thies v. St. Louis County,* 402 S.W.2d 376, 379–80 (Mo.1966), and *Vochatzer v. Public Water Supply District No. 1,* 637 S.W.2d 418, 420 (Mo.App.1982), the grantors attempted to enforce alleged oral terms on the basis that the terms constituted consideration for the conveyances. Because the alleged oral terms were not in the written conveyances or in any separate writings,

however, the alleged terms were not enforceable under Section 432.070.

**4.** The issue in *Hammonds* was whether Section 432.070 precluded a plaintiff from asserting a claim against a county for money had and received based upon an implied-in-law contract. 217 S.W.3d at 294. In holding that Section 432.070 did not preclude such a claim, the Court considered the legislature's intent in enacting Section 432.070, including the purpose of the statute's requirements and the situations the legislature was attempting to guard against. *Id.* at 294–95.

428

demands, and to restrain officials from heedless and ill-considered engagements." *Id.* (internal quotation marks omitted). The statute guards against individual officials' obligating the municipality "to pay for or perform unauthorized actions," and it guards against the municipality's "receiving services from other parties where the [municipality] has not properly approved an agreement for specific work at a specific price." *Id.* at 295.

Keeping in mind the purpose of the statute and the type of contract at issue, we note that "[t]he concerns that the legislature sought to address by section 432.070 are not present" in this case. *Id.* This is not a contract for services performed for the City. The easement agreement is "not for any public work to be done, or repairs or improvement to be made pursuant to the contract, but is simply a contract for the present purchase of existent property needed by the city for public sewer purposes." *Schwabe v. Moore,* 187 Mo.App. 74, 172 S.W. 1157, 1160 (1915) (internal quotation marks omitted). The Kindreds do not seek to recover based upon a theory of implied contract. The Kindreds seek only to enforce the express terms of their written easement agreement with the City—an agreement that was within the scope of the City's powers to make. Under these circumstances, we find that the easement agreement's substantial compliance with Section 432.070 is sufficient to render it enforceable. We find no error in the judgment ordering specific performance of the easement agreement. The points on appeal are denied.

### Conclusion

We affirm the circuit court's judgment.

All Concur.